The' opinion of the Court was drawn up by
Cutting, J.
Writ of entry to recover title and possession of lot No. 11, range 10th, in Garland, containing 160 acres. Both parties claim under one John L. Leighton; the demandant, as assignee of his mortgage to Nathan Wyman, dated Feb. 2d, 1857, and recorded "Feb. 3d, 1857, 1 h., 25 m., P. M.the tenant, as grantee of Ezekiel Page, who, by a levy on the same estate, seized it on execution, as contended, on "Feb. 2d, 1857, at 9 o’clock, A. M.” But the seizin on that day or at any otlier time before the recording of the mortgage is controverted, hence arises the first point presented.
The officer, having the execution, returns thereon as follows : — "Penobscot, ss., February 2d, 1857, at nine o’clock in the forenoon, and also on the seventeenth day of January in the year of our Lord one thousand eight hundred and fifty-seven, at nine o’clock in the forenoon, L seized and tools in execution, by virtue of the within execution, the real estate and land of the within named debtor John L. Leighton, and the lands of said debtor set off by metes and bounds to *439 the creditor within named, and appraised towards satisfying this execution, and all fees, which lands so appraised are described in, as appears by the foregoing certificate of the appraisers, which is hereby adopted by me and is made by me a part of this my return.”
We lay out of the case the seizure of the seventeenth of January, because the subsequent seizure on Feb. 2d, must be considered as a waiver or abandonment of the former. The question then presented is, what constitutes a seizure on an execution by an officer? An important question, in the decision of which, we must resort to the legislation and decisions upon that subject.
By § 5, c. 94 of E. S. of 1841, in force at the time of the levy, it is provided that — "After the officer has taken land in execution, and given notice to the debtor thereof, if he or his attorney be residing in the same county, and allowed him a reasonable, specified time, within which to appoint an appraiser, as mentioned in the preceding section, he shall then proceed, without unnecessary delay, to have the estate appraised, and the levy completed; and it shall be considered as made, when the land is taken in execution; and the subsequent proceedings and return shall bo valid, though made and done after the return day, or after the removal or other disability of the officer.” Sect. 24, — "The officer shall state in his return, on the execution, the time when the land was taken in execution.” Sect. 25, — " When lands are taken and set off on execution, the debtor may redeem the same at any time within one year after the levy,” &c.
Statute of 1856, c. 278, § 1, provides that — "All levies on real estate which have already been made, or which shall hereafter be made, shall, for the purpose of fixing the amount due on the execution, and the time when the debtor’s right to redeem will expire, be considered as commenced, on the day of the date of the administration of the oath to the appraisers, although it may appear from the officer’s return that the estate was seized on the execution before that day, or *440 that the proceedings were not completed until after that day.”
The foregoing provisions, and others upon the same subject matter, all recognize a seizure on execution by the officer as the basis of, and preliminary to ulterior proceedings. The officer’s return upon a writ of an attachment of real estate by him made, and the time when so made, has invariably been held to be conclusive between the parties, however general in terms, without designation of lot or description of boundaries, and even without any knowledge of the officer of the existence of any such estate. Can it reasonably be contended that a mere seizure on execution requires an act more formal than an attachment on a writ ? It is true that, in order to perfect the seizure, a levy must subsequently be made, and within a reasonable time and according to the requirements of law, which are not questions now under consideration.
We are aware of the decision in Allen v. The Portland Stage Co., 8 Maine, 207, wherein Weston, J., remarks that — "The first act to be done by the officer, in extending an execution upon real estate, is to cause three disinterested freeholders to be sworn as appraisers. The statute points out how they are to be designated, in which' the creditor, the debtor and the officer have a part to perform; but the duty of causing them to be sworn is the first, which is especially and distinctly enjoined upon the officer. We are of opinion that, until this is done, the levy cannot be said as commenced. Indeed, it might not be going too far to hold, that the first step in extending an execution- upon any particular real estate is when it is shown to the appraisers; for there is no designation of the land to be appraised, in the oath administered.”
That opinion was delivered in 1832, under the provisions of R. S. of 1821, c. 60, § 27. And what may be considered somewhat remarkable, is, in that whole chapter, no mention is made of a seizure or the taking real estate in execution by an officer, or any such words as have been quoted *441 in the statutes of 1841 and 1856, expressive of preliminary proceeding. So that, in Hall v. Crocker, 3 Met., 245, Shaw, C. J,, was well justified in his apology to the Court, whose opinion he overruled, by remarking that — "possibly the decision in that ease (Allen v. Portland Stage Co.) may have been influenced by the special provisions of the Revised Statutes of Maine, which may differ in phraseology from the Massachusetts Acts.” He then proceeds to cite and comment upon certain provisions in -their Acts, which are very-similar to those now embraced in ours already referx-ed to. We fully concur in the correctness of the opinion in Hall v. Grocker, and in its conclusion, that — "it is the officer’s return alone, after all, which must govern.”
In the present case, the officer returns that, on Feb. 2d, 1857, at nine o’clock, &c., he "seized and took in execution,” •&e., which was the commencement of the service of the execution, and all subsequent proceedings related back to that time, which was before the record of the demandant’s mortgage. Fitch v. Tyler, 34 Maine, 463.
The next point presented, and on.which the demandant’s counsel relies as a fatal defect in the levy, is an appointment of an appraiser by the creditor; it is contended that the officer’s return shows the selection to have been made by himself and not by the creditor. We have been furnished with a copy of the levy certified by the register of deeds, and also with one certified by the clerk of the Court to which the execution and proceedings were returnable. The first is as follows: — K Jonas Wheeler of Dexter was chosen an appraiser by me in behalf of the within named creditor, Ezekiel Page, and I was then notified of the same.” The second is similar to the first except the word " and ” is substituted. for "me.”
We have also been furnished with the original, which on inspection appears px-oblematical. It was a grave fault in the officer, mxdoubtedly, and for which he is justly censurable for his defective chirography. But if the word be me ixxstead of and, as urged by the demandant’s counsel, and *442 the register’s copy is alone admissible, can it be considered more than a clerical error, calculated to deceive no one who may be able and disposed to read the whole sentence, viz., " and I was then notified of the same;” i. e., notified of an act which he had himself performed! The astute counsel must also yield this point.
It is next contended that under § 7 of R. S. of 1841, c. 94, the nature of the estate appraised should be described,&c. That section has received a construction in Roop v. Johnson, 23 Maine, 335, adverse to such proposition. It is true that R. S. of 1857, c. 76, § 3, enacted subsequent to the levy, may have changed the phraseology of the former section, but whether for better or worse remains perhaps hereafter to be seen.
The other points raised by counsel are already top well settled to require a further examination.

Demandant nonsuit.

Tenney, C. J., Appleton, Goodenow, Davis and Kent, JJ., concurred.